UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
EQUIBAL, INC.,                                   :
                  Plaintiff,          :
v.                                               :
                                                :
365 SUN LLC d/b/a/ Nutree Cosmetics;             :     **OPINION AND ORDER**
NUTREE PROFESSIONAL BRAZIL; LANCE                :
THOMPSON; NATALIA Y. LIKHACHEVA;                 :     21 CV 6254 (VB)
BRUNO BORGES GARCIA; and CHROMUS                 :
COMERCIAL EIRELLI,                               :
                  Defendants.         :
--------------------------------------------------------------x

Briccetti, J.:

      Plaintiff Equibal, Inc. ("Equibal"), brings this action against defendants 365 Sun LLC

doing business as Nutree Cosmetics ("365 Sun"), Nutree Professional Brazil ("Nutree Brazil"),

Lance Thompson, Natalia Y. Likhacheva, Bruno Borges Garcia, and Chromus Comercial Eirelli

("Chromus"), alleging trademark infringement in violation of the Lanham Act and New York

law, unfair competition and false designation of origin in violation of the Lanham Act, and

violations of Sections 349 and 350 of the New York General Business Law.  Plaintiff's claims

arise out of defendants' alleged use of "NUTREE" and "NUTREE PROFESSIONAL" marks,

which purportedly infringe on "NUFREE" and "NUFREE PROFESSIONALS" marks owned by

plaintiff.  Defendants 365 Sun, Thompson, and Likhacheva (collectively, the "U.S. Defendants")

bring two counterclaims against plaintiff for tortious interference with business relations and

prospective business relations under New York law.  Defendants Nutree Brazil, Garcia, and

Chromus (collectively, the "Brazil Defendants") have not yet been served.

      Now pending are plaintiff's (i) motion to dismiss the U.S. Defendants' counterclaims

pursuant to Rule 12(b)(6) (Doc. #89); and (ii) motion to serve the Brazil Defendants by

alternative means.  (Doc. #98).

For the reasons set forth below, the motion to dismiss is GRANTED and the motion to serve the Brazil Defendants by alternative means is GRANTED IN PART and DENIED IN PART.

The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

I.     U.S. Defendants' Relevant Allegations

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the U.S. Defendants' counterclaims complaint, as well as in documents incorporated by reference or integral to the complaint, and draws all reasonable inferences in the U.S. Defendants' favor, as summarized below.

365 Sun has marketed and distributed products "under the Nutree brand since 2016 and the mark and brand have been well-known and well-respected in the market."  (Doc. #85 at 11–15 ("Countercl. Compl.") ¶ 5).  These products include "hair restoration, hydration, treatments, [and] cosmetics" products, which are sold through Amazon.com and other platforms.  (Id. ¶ 6).  The U.S Defendants contend 365 Sun has a business relationship with the Brazil Defendants, of which plaintiff is aware.  Nutree Brazil allegedly supplies some Nutree-branded products to 365 Sun, which distributes such products.

According to the U.S. Defendants, defendant "Garcia is the applicant for a pending United States trademark registration application (the 'Nutree Mark')."  (Countercl. Compl. ¶ 10).  In addition, "365 Sun has developed and utilized labeling, logos and packaging for its marketing and advertising of the Nutree Products (the 'Trade Dress')."  (Id. ¶ 12).  "The Trade Dress and Nutree Mark" allegedly "have significant and valuable positive recognition among relevant consumers and prospective consumers of Nutree products."  (Id. ¶ 13).

The U.S. Defendants contend plaintiff has engaged in several improper actions to interfere with their business relationships.  First, they allege plaintiff "knowingly interfered with the Nutree Mark trademark application process by submitting a protest to said application" to the U.S. Patent and Trademark Office ("USPTO"), which "delay[ed] the trademark registration of the Nutree Mark and the legal protections resulting from trademark registration," and thereby interfered with "U.S. Defendants' prospective business relationships with its customers and prospective customers."  (Countercl. Compl. ¶¶ 15–16).  Second, the U.S. Defendants claim plaintiff "knowingly attempted to impose pressure on" them and interfered with the U.S. Defendants' business relationship with the Brazil Defendants "by forcing a settlement among all Parties to the instant case, the terms of which were not agreed and would be detrimental to the U.S. Defendants' business relationships" with the Brazil Defendants, and "to 365 Sun's business."  (Id. ¶ 17).  Finally, the U.S. Defendants contend plaintiff "knowingly attempted to interfere with" their current and prospective business relationships by "obtaining an Entry of Default against the U.S. Defendants" in the instant action, "while settlement negotiations among the Parties were ongoing, and without providing notice to the U.S. Defendants that it was seeking an Entry of Default" against them.  (Id. ¶ 18).

II.    Relevant Procedural History

On August 13, 2021, plaintiff filed proofs of service as to the U.S. Defendants, indicating they were served on August 3, 2021 (Docs. ##7–9).  The U.S. Defendants therefore had until August 24, 2021, to respond to the complaint.  (Doc. #10).

On August 17, 2021, plaintiff attempted to serve Garcia and Nutree Brazil by personal delivery in Brazil at the address on the NUTREE PROFESSIONAL trademark application; however, they were no longer at that address.  (Doc. #24 ¶ 21).  On August 26, 2021, plaintiff

unsuccessfully attempted to serve Garcia and Nutree Brazil at another address in Brazil.  (<u>Id</u>. ¶ 22).

On August 31, 2021, because none of the defendants had responded to the complaint or appeared in this action, the Court directed plaintiff to seek default as to all defendants by September 14, 2021, and thereafter to move, by order to show cause, for default judgment against each defendant by September 28, 2021.  (Doc. #10).  In addition, the Court warned, in bold typeface, "If plaintiff fails to satisfy either deadline, the Court may dismiss the case without prejudice for failure to prosecute or failure to comply with court orders" pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.  (<u>Id</u>.).  Pursuant to that Order, on September 14, 2021, plaintiff filed a proposed Clerk's certificate of default as to the U.S. Defendants only.  (Doc. #11).  On September 17, 2021, the Court stayed plaintiff's time to move for a default judgment, stating, "[i]f after <u>all</u> defendants have been served, all defendants are in default, the Court will establish deadlines for plaintiff to seek certificates of default as to defendants and to move by order to show cause for a default judgment as to any defendants remaining in default."  (Doc. #14).  On September 17, 2021, the Clerk of Court issued a certificate of default as to the U.S. Defendants.  (Doc. #15).

On January 5, 2022, counsel for the U.S. Defendants, Mark Kimball, Esq., appeared in this action.  (Doc. #21).  Two days later, plaintiff filed a motion to (i) serve the Brazil Defendants by alternative means (the "First Request for Alternative Service"), and (ii) enforce a purported settlement agreement between the parties.  (Doc. #22).  Plaintiff proposed several alternative methods of service, including service on Curt Handley, Esq., the attorney of record listed on defendant Garcia's "NUTREE PROFESSIONAL" trademark application.  (Doc. #23 at 19).  The U.S. Defendants opposed plaintiff's motion on January 18, 2022.  (Doc. #25).  In

support of the U.S. Defendants' opposition, Mr. Kimball declared under oath that he did not represent Garcia or Nutree Brazil, had never had contact with them, and could not accept service on their behalf.  (Doc. #26 ¶¶ 4–5).

On January 19, 2022, the U.S. Defendants moved to vacate the certificate of default. (Doc. #30).  Plaintiff opposed the U.S. Defendants' motion on February 2, 2022.  (Doc. #42).

On March 30, 2022, the Court issued an Order (i) denying plaintiff's motion to enforce the settlement agreement, (ii) denying without prejudice the First Request for Alternative Service, and (iii) granting the U.S. Defendants' motion to vacate the certificate of default.  (Doc. #50).  The Court subsequently issued a bench ruling explaining the basis for its decision.  (See id.).

Regarding the First Request for Alternative Service, the Court found that, either individually or in combination, plaintiff's proposed alternative methods of service were not reasonably calculated to inform the Brazil Defendants of this action, and thus they did not comport with due process.  In addition, the Court noted that one of plaintiff's arguments for alternative service rested on the faulty premise that Brazil is not a signatory to the Hague Convention.  However, Brazil is a signatory to the Hague Convention as of June 1, 2019, see Status Table, HCCH, https://www.hcch.net/en/instruments/conventions/status-table/?cid=17 (last visited Apr. 5, 2023), as well as another treaty governing service of process, the Inter-American Convention on Letters Rogatory (the "Inter-American Convention").  See Wash. State Inv. Bd. v. Odebrecht S.A., 2018 WL 6253877, at *5 (S.D.N.Y. Sept. 21, 2018).  Accordingly, the Court advised plaintiff that any renewed motion for alternative service must address the applicability of these treaties and whether the proposed alternative means of service violates either treaty.

5

On September 11, 2022, with leave of the Court, plaintiff filed an amended complaint adding defendant Chromus.  (Doc. #75).

In October 2022, plaintiff had the summons and amended complaint translated into Brazilian Portuguese and gave the translated documents to a process service company, APS International Ltd. ("APS"), to commence service of process on the Brazil Defendants in accordance with the Hague Convention.  (Doc. #100 ¶¶ 23–24).  On December 19, 2022, APS advised plaintiff's counsel the "documents are currently abroad for service" and "[t]he normal timeframe for Brazil is 6 months to a year or more."  (Doc. #100-1 at ECF 2).[1]

## DISCUSSION

I.      Motion to Dismiss the U.S. Defendants' Counterclaims

        A.      Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under "the two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).[2]  First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Ashcroft v. Iqbal, 556 U.S. at 679.

---

[1]      "ECF __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

[2]      Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

B.     Tortious Interference

Plaintiff argues the U.S. Defendants cannot state a claim against it for tortious interference with business relations or tortious interference with prospective business relations because the U.S. Defendants do not plausibly allege an injury to their business relations.

The Court agrees.

1.     Legal Standard

"As an initial matter, . . . tortious interference with business relations and tortious interference with prospective economic advantage are not distinct causes of action." Valley Lane Indus. Co. v. Victoria's Secret Direct Brand Mgmt, L.L.C., 455 F. App'x 102, 105 (2d Cir. 2012) (summary order). "These causes of action are also synonymous with tortious interference with prospective business relations." Iacovacci v. Brevet Holdings, LLC, 2023 WL 2631966, at *15 n. 13 (S.D.N.Y. Mar. 24, 2023).

To prevail on a claim for tortious interference with business relations under New York law, the U.S. Defendants "must show that (1) [the U.S. Defendants] had business relations with a third party; (2) [plaintiff] interfered with those business relations; (3) [plaintiff] acted for a wrongful purpose or used dishonest, unfair, or improper means; and (4) [plaintiff's] acts injured

the relationship." <u>Pride Techs., LLC v. Khublall</u>, 2022 WL 17587755, at *1 (2d Cir. Dec. 13, 2022) (summary order).  "New York courts have placed some limits on what constitutes 'business relations' by rejecting, for example, a claim containing only a general allegation of interference with customers without any sufficiently particular allegation of interference with a specific contract or business relationship."  <u>16 Casa Due, LLC v. Merkin</u>, 791 F.3d 247, 262 (2d Cir. 2015).  Further, "[w]here the underlying business relations remain undisturbed, . . . a claim for tortious interference is fatally defective."  <u>Insight Glob., LLC v. Wenzel</u>, 2018 WL 11318728, at *5 (S.D.N.Y. Aug. 27, 2018) (quoting <u>PPX Enters., Inc. v. Audiofid. Enters.</u>, 818 F.2d 266, 269 (2d Cir. 1987), <u>abrogated on other grounds by</u> <u>Hannex Corp. v. GMI, Inc.</u>, 140 F.3d 194, 206 (2d Cir. 1998)).

      2.    <u>Application</u>

     Here, the U.S. Defendants' tortious interference claims fail because they do not plausibly allege plaintiff's actions injured their business relations.

     The U.S. Defendants allege in a conclusory fashion that (i) "business relations between the U.S. Defendants and Nutree Brazil and Garcia have been injured as a result of Plaintiff's interference with said business relations" (Countercl. Compl. ¶ 23), and (ii) "prospective business relations between U.S. Defendants and their existing and prospective customers have been injured as a result of Plaintiff's interference with said prospective business relations."  (<u>Id</u>. ¶ 27).  But the U.S. Defendants fail to plead facts demonstrating they lost business due to, or that their business was otherwise harmed by, plaintiff's purported interference.  There are no allegations that the Brazil Defendants or others "terminated, altered, or modified their existing agreement or relationship" with the U.S. Defendants, or "failed to enter into a prospective agreement or relationship" with them.  <u>Insight Glob., LLC v. Wenzel</u>, 2018 WL 11318728, at *6.

The U.S. Defendants' bare assertions of injury are insufficient to state a tortious interference claim.[3]  See Eminah Props. LLC v. Energizer Holdings, Inc., 531 F. Supp. 3d 593, 607 (S.D.N.Y. 2021) (plaintiffs did not plausibly allege injury to relationship with defendant eBay because "plaintiffs' conclusory allegation that the defendants' 'actions interfered with the plaintiffs' business relationship with eBay' does not say how the relationship with eBay was damaged, nor do their allegations about what happened to their accounts").

Accordingly, the U.S. Defendants' counterclaims must be dismissed.

II.     Motion to Serve the Brazil Defendants by Alternative Means

Plaintiff argues the Lanham Act authorizes service upon the Brazil Defendants through the Director of the USPTO, and that such service complies with Rule 4(f).[4]

The Court agrees as to defendants Chromus and Garcia, but disagrees as to defendant Nutree Brazil.

A.     Section 1051(e) of the Lanham Act

To determine whether service through the Director of the USPTO is appropriate, the Court must first decide whether the service procedures in Section 1051(e) of the Lanham Act ("Section 1051(e)") apply to court proceedings, and if so, whether and to what extent they apply to the instant action.

---

[3]     The U.S. Defendants' allegation that plaintiff's proposed settlement agreement between all parties "would be detrimental to the U.S. Defendants' business relationships among the other Defendants, and would be detrimental to 365 Sun's business" (Countercl. Compl. ¶ 17), does not establish actual injury because, as the U.S. Defendants declared, they never agreed to the terms of a settlement or executed a settlement agreement in this case.  (Doc. #27 ¶ 4; Doc. #28 ¶ 4). Moreover, the Court denied plaintiff's motion to enforce the putative settlement agreement. (Doc. #50).

[4]     The U.S. Defendants do not oppose the motion.  (Doc. #107).

1.     Applicability to Court Proceedings

Section 1051(e) outlines special procedures by which certain trademark applicants may

be served:

> If the [trademark] applicant is not domiciled in the United States the applicant may
> designate, by a document filed in the United States Patent and Trademark Office, the
> name and address of a person resident in the United States on whom may be served
> notices or process in proceedings affecting the mark.  Such notices or process may be
> served upon the person so designated by leaving with that person or mailing to that
> person a copy thereof at the address specified in the last designation so filed.  If the
> person so designated cannot be found at the address given in the last designation, or if the
> registrant does not designate by a document filed in the United States Patent and
> Trademark Office the name and address of a person resident in the United States on
> whom may be served notices or process in proceedings affecting the mark, such notices
> or process may be served on the Director.

15 U.S.C. § 1051(e) (emphasis added).

Neither the Supreme Court nor the Second Circuit have addressed whether Section

1051(e) permits service on foreign defendants in court proceedings affecting a trademark, or

whether it is limited to administrative proceedings before the USPTO.  In fact, a recent Ninth

Circuit opinion noted it was a "question of first impression in the courts of appeals," and that

lower courts are divided on the issue.  San Antonio Winery, Inc. v. Jiaxing Micarose Trade Co.

Ltd. ("San Antonio Winery"), 53 F.4th 1136, 1138, 1142 (9th Cir. 2022).  After analyzing the

statutory text, the Ninth Circuit concluded "the ordinary meaning of 'proceedings affecting the

mark' includes proceedings in court," and therefore "the procedures of Section 1051(e) may be

used to serve process in such proceedings."  Id. at 1142.

The Court agrees with the Ninth Circuit's interpretation of the statutory text and declines

to consider sources beyond the text.[5]

---

[5]     Although the Ninth Circuit also saw "no reason to look beyond the statutory text," it
nevertheless considered extrinsic sources, including legislative history, but found them
unpersuasive.  San Antonio Winery, Inc. v. Jiaxing Micarose Trade Co., Ltd., 53 F.4th at 1143.

"Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose." Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 175 (2009). "To determine that ordinary meaning, courts may look to contemporary dictionary definitions." El Omari v. Int'l Crim. Police Org., 35 F.4th 83, 88 (2d Cir. 2022), cert. denied, 143 S. Ct. 214 (2022). "If the text of the statute is not entirely clear, we then turn to the broader statutory context and its history." Id.

The Court first examines the term "proceedings." "The phrase 'proceedings affecting the mark' has been part of the Lanham Act since the statute's enactment in 1946." San Antonio Winery, Inc. v. Jiaxing Micarose Trade Co., 53 F.4th at 1140; see Pub. L. No. 79-489, § 1(d), 60 Stat. 427, 428 (1946). The ordinary meaning of "proceedings"—both now and when the statute was enacted—encompasses legal actions in courts, such as a lawsuit brought in this Court. For example, the third edition of Black's Law Dictionary, published in 1933, "defined the word 'proceeding' as, 'in a general sense, the form and manner of conducting juridical business before a court or judicial officer." Id. (quoting Proceeding, Black's Law Dictionary (3d ed. 1933)). And the second edition of Webster's New Dictionary of the English Language, published in 1936, "defined a proceeding as, among other things, 'the course of procedure in an action at law' and 'any step or act taken in conducting litigation.'" Id. (quoting Proceeding, Webster's New International Dictionary of the English Language (2d ed. 1936)).

The statute's reference to service of "notices or process," which also has been part of the Lanham Act since 1946, further confirms that "proceedings" includes court proceedings. See Pub. L. No. 79-489, § 1(d), 60 Stat. 427, 428 (1946). "Process" is the mechanism whereby a defendant typically is informed about a court proceeding against it. See, e.g., Fed. R. Civ. P. 4. Significantly, "there is no process served in administrative proceedings before the" USPTO. San

11

Antonio Winery, Inc. v. Jiaxing Micarose Trade Co., Ltd., 53 F.4th at 1141.  Instead, the USPTO

issues a "notice" to inform a trademark registrant of an administrative proceeding against it.  Id.;

see, e.g., 37 C.F.R. § 2.113(a) (discussing content of a "notice of institution" for a cancellation

proceeding and providing "[t]he notice . . . constitutes service to the registrant of the petition to

cancel."); id. § 2.116(c) ("The notice of opposition or the petition for cancellation and the answer

correspond to the complaint and answer in a court proceeding.").

      Moreover, court proceedings involving Lanham Act claims often "affect" a trademark.

The "underlying purpose of the Lanham Act" is "protecting consumers and manufacturers from

deceptive representations of affiliation and origin."  Landscape Forms, Inc. v. Columbia Cascade

Co., 113 F.3d 373, 375 (2d Cir. 1997).  Here, plaintiff brings claims under the Lanham Act for

trademark infringement, unfair competition, and false designation of origin, arising out of

defendants' use of the NUTREE and NUTREE PROFESSIONAL marks.  Among other relief,

plaintiff seeks to permanently enjoin defendants from using the NUTREE and NUTREE

PROFESSIONAL marks in conjunction with their goods and online retail services, and from

otherwise infringing on Equibal's NUFREE and NUFREE PROFESSIONALS marks.  (Doc.

#75 ("Am. Compl.") ¶ 63).  The Lanham Act creates civil causes of action for plaintiff's claims,

see 15 U.S.C. § 1114(1); id. § 1125(a), and authorizes federal courts to grant plaintiff injunctive

relief upon a finding of liability under 15 U.S.C. § 1125(a).  Id. § 1116.  Accordingly, plaintiff's

lawsuit is a proceeding affecting the NUTREE and NUTREE PROFESSIONAL marks for which

Chormus and Garcia applied.

2.      Applicability in this Action

As an initial matter, plaintiff does not allege defendant Nutree Brazil has applied for a

trademark relevant to this action, nor is the Court aware of any such application.  Accordingly,

the service procedures of Section 1051(e) are inapplicable to Nutree Brazil.

However, factual allegations in the amended complaint, as well as applications submitted

to the USPTO,[6] indicate defendants Chromus and Garcia are trademark "applicants [who are] not

domiciled in the United States."  15 U.S.C. § 1051(e).  Specifically, plaintiff alleges Garcia is the

applicant for the NUTREE PROFESSIONAL trademark application filed on March 11, 2021.

(Am. Compl. ¶ 12; id. at ECF 24).  And the USPTO Trademark Electronic Search System shows

Chromus as the applicant for a NUTREE PROFESSIONAL trademark application filed on

October 22, 2019.  Trademark Electronic Search System, U.S. Patent & Trademark Office,

https://tsdr.uspto.gov/#caseNumber=88663188&caseType=SERIAL_NO&searchType=statusSe

arch (last visited Apr. 10, 2023).   In addition, Garcia is the applicant for another NUTREE

PROFESSIONAL trademark application filed on May 16, 2022.  Trademark Electronic Search

System, U.S. Patent & Trademark Office, https://tsdr.uspto.gov/#caseNumber=97411722&Case

Type=SERIAL_NO&searchType=statusSearch (last visited Apr. 10, 2023).

Although Chromus and Garcia's trademark applications designate individuals under the

"Correspondence Information" section, plaintiff has demonstrated it cannot serve these

designated individuals.  The October 22, 2019, and March 11, 2021, applications for Garcia and

---

[6]     The Court may take judicial notice of applications submitted to the USPTO, as they are available on the USPTO Trademark Electronic Search System and "part of the USPTO public record."  See Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of N.J., 894 F. Supp. 2d 288, 300 n.6 (S.D.N.Y. 2012); see also Telebrands Corp. v. Del Labs., Inc., 719 F. Supp. 2d 283, 287 n. 3 (S.D.N.Y. 2010) ("The Court may properly take judicial notice of official records of the United States Patent and Trademark Office and the United States Copyright Office.").

Chromus provide the contact information for attorney Curt Handley, Esq.  See
Trademark/Service Mark Application, Principal Register, U.S. Patent & Trademark Office,
https://tsdr.uspto.gov/documentviewer?caseId=sn90573033&docId=FTK2021031509564
3#docIndex=9&page=1 (Mar. 11, 2021); Trademark/Service Mark Application, Principal
Register, U.S. Patent & Trademark Office, https://tsdr.uspto.gov/documentviewer?caseId=
sn88663188&docId=FTK20191025075049#docIndex=4&page=1 (Oct. 22, 2019).  However, by
bench ruling on April 29, 2022, the Court determined plaintiff had not demonstrated Mr.
Handley was in recent, regular contact with Garcia such that serving Mr. Handley would
reasonably apprise Garcia of this action.  Further, Garcia's May 16, 2022, application lists the
contact information for another attorney, Paul Cosmovici, Esq.  Trademark/Service Mark
Application, Principal Register, U.S. Patent & Trademark Office, https://tsdr.uspto.gov/
documentviewer?caseId=sn97411722&docId=FTK20220519085427#docIndex=12&page=1
(May 16, 2022).  Nevertheless, Mr. Cosmovici's office informed plaintiff's counsel that
Cosmovici could not accept service on Garcia's behalf, because Garcia was going to be
represented by another unidentified attorney going forward.  (Doc. #100-3).

      Moreover, in bringing this action for alleged violations of the Lanham Act, plaintiff seeks
to enjoin defendants from using the NUTREE marks.  (Am. Compl. ¶ 63).  Thus, this action is a
"proceeding[ ] affecting the mark[s]" for which Chromus and Garcia applied to register, within
the ordinary meaning of Section 1051(e).  See San Antonio Winery, Inc. v. Jiaxing Micarose
Trade Co., Ltd., 53 F.4th at 1141 (trademark infringement action seeking to prohibit defendant
from using mark, cancel defendant's registered mark, and require defendant to abandon pending
application to register mark "comfortably fall[s] within the plain and ordinary meaning of the
phrase 'proceedings affecting the mark'").

Accordingly, the service procedures of Section 1051(e) are applicable here as to defendants Chromus and Garcia, but not Nutree Brazil.

B.    Service Under Rule 4(f)

Having concluded the service procedures of Section 1051(e) apply to defendants Chromus and Garcia, the Court may permit plaintiff to serve these defendants through the Director of the USPTO if such service complies with Rule 4(f) and is necessary and appropriate.

1.    Applicable Law

An individual or corporation may be served outside the United States (i) by "any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents," Fed. R. Civ. P. 4(f)(1); (ii) "if there is no internationally agreed means . . . , by a method that is reasonably calculated to give notice," id. 4(f)(2); or (iii) "by other means not prohibited by international agreement, as the court orders." Id. 4(f)(3); accord Fed. R. Civ. P. 4(h)(2).

"An alternative method of service under Rule 4(f)(3) is acceptable if it (1) is not prohibited by international agreement; and (2) comports with constitutional notions of due process." ShelterZoom Corp. v. Goroshevsky, 2020 WL 4252722, at *1 (S.D.N.Y. July 23, 2020).  To comport with due process, an alternative method of service must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." In re BRF S.A. Secs. Litig., 2019 WL 257971, at *2 (S.D.N.Y. Jan. 18, 2019) (quoting Mullane v. Cent. Hanover Bank & Tr. Co., 339 U.S. 306, 314 (1950)).

"Service of process under Rule 4(f)(3) is neither a last resort nor extraordinary relief.  It is merely one means among several which enables service of process on an international defendant."  Elsevier, Inc. v. Chew, 287 F. Supp. 3d 374, 377 (S.D.N.Y. 2018).  "To obtain the Court's permission to utilize Rule 4(f)(3), plaintiff must show that the facts and circumstances of the present case necessitate district court intervention."  Wash. State Inv. Bd. V. Odebrecht S.A., 2018 WL 6253877, at *4.  The decision whether to authorize service under this section "is committed to the sound discretion of the district court."  Elsevier, Inc. v. Chew, 287 F. Supp. 3d at 378.[7]

### 2.   Application

First, the Court concludes the governing international agreements between the United States and Brazil—the Hague Convention and the Inter-American Convention—do not bar service on defendants Chromus and Garcia through the Director of the USPTO.

With respect to the Hague Convention, when "service on a domestic agent is valid and complete under both state law and the Due Process Clause, [the] inquiry ends and the [Hague] Convention has no further implications."  Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 707 (1988).  "Whatever internal, private communications take place between the agent and a foreign principal" after that "are beyond the concerns of this case."  Id.  Because service on the Director of the USPTO would occur within the United States, the Hague Convention would not be implicated.  Id. at 706–08 (state law allowing a foreign corporation to be served domestically by service on U.S. subsidiary did not implicate Hague Convention); see also San

---

[7]     In addition, Rule 4 "expressly contemplates that Congress might create alternative service procedures like those contained in Section 1051(e)."  San Antonio Winery, Inc. v. Jiaxing Micarose Trade Co., 53 F.4th at 1143 n.8; see Fed. R. Civ. P 4(h) (creating rules for serving a corporation, which apply "[u]nless federal law provides otherwise").

Antonio Winery, Inc. v. Jiaxing Micarose Trade Co., Ltd., 53 F.4th at 1143 ("Service under Section 1051(e) occurs domestically and thus falls outside the scope of the [Hague] Convention").

Nor would serving Chromus and Garcia through the Director of the USPTO run afoul of the Inter-American Convention, which "merely provides one possible method of service" and "is neither mandatory nor exclusive."  Wash. State Inv. Bd. v. Odebrecht S.A., 2018 WL 6253877, at *5 (collecting cases and finding Inter-American Convention permits service on Brazilian defendant through its U.S. counsel in a related criminal case).

Second, the Court finds serving Chromus and Garcia through the Director of the USPTO complies with due process.  Such service is reasonably calculated to inform Chromus and Garcia of this action, as Section 1051(e) explicitly warns applicants availing themselves of U.S. trademark protection, such as Chromus and Garcia, that if they do not designate an agent in the United States to receive service, or if their designated agent cannot be located at the address provided, they may be served through the Director of the USPTO.

The Court's final inquiry is whether it should exercise discretion to permit plaintiff to serve Chromus and Garcia by serving the Director of the USPTO.  See Wash. State Inv. Bd. v. Odebrecht S.A., 2018 WL 6253877, at *6.  "To determine whether alternative service is appropriate, district courts in this Circuit have generally required:  (1) a showing that the plaintiff has reasonably attempted to effectuate service on the defendant, and (2) a showing that the circumstances are such that the court's intervention is necessary."  Id.  Parties are not required to show they have already exhausted potential mechanisms of service under an international agreement before a Court grants alternative service under Rule 4(f)(3).  See id.

Here, in requesting alternative service, plaintiff cites its difficulties in attempting to serve the Brazil Defendants, and the length of time it takes to serve process in Brazil.  Declarations submitted by plaintiff's counsel outline his extensive efforts to serve the Brazil Defendants since August 2021, including enlisting the aid of APS in October 2022.  (Doc. #24 ¶¶ 20–22; Doc. #100 ¶¶ 19–31).  And a December 19, 2022, status report from APS states the "normal timeframe for" service in "Brazil is 6 months to a year or more."  (Doc. #100-1 at ECF 2).

Other courts in this district have permitted alternative service on defendants in Brazil. See, e.g., Wash. State Inv. Bd. v. Odebrecht S.A., 2018 WL 6253877, at *8 (permitting alternative service because of "persuasive evidence that use of the letters rogatory system will delay this case for a year to a year-and-a half," plaintiff had made some efforts to serve defendant in Brazil, and plaintiff did not delay seeking relief); In re Petrobras Sec. Litig., 2015 WL 1084651, at **1–2 (S.D.N.Y. Nov. 2, 2015).  Accordingly, in light of potential further delays in serving Chromus and Garcia, the fact that this case has been pending for nearly two years, plaintiff's efforts to serve the Brazil Defendants, and plaintiff's First Request for Alternative Service, the Court finds it is necessary and appropriate for plaintiff to serve Chromus and Garcia by alternative means under Rule 4(f)(3).

**CONCLUSION**

Plaintiff's motion to dismiss the counterclaims is GRANTED.

Plaintiff's motion to serve the Brazil Defendants by alternative means is GRANTED IN PART and DENIED IN PART.  Plaintiff may serve defendants Chromus Comercial Eirelli and Bruno Borges Garcia by serving the Director of the USPTO pursuant to 15 U.S.C. § 1051(e). However, plaintiff may not serve defendant Nutree Professional Brazil by serving the Director of the USPTO.

The Clerk is instructed to terminate the motions.  (Docs. ##89, 98).

By April 24, 2023, plaintiff shall (i) serve foreign defendants Chromus Comercial Eirelli and Bruno Borges Garcia by serving the Director of the USPTO, and file proof of service on the docket; and (ii) file a letter informing the Court of the status of its efforts to serve foreign defendant Nutree Professional Brazil under the Hague Convention.

Dated: April 10, 2023
      White Plains, NY

              SO ORDERED:

              Vincent L. Briccetti
              United States District Judge