UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

EQUIBAL, INC.,                       :

              Plaintiff,     :

v.                           :

                           :     **OPINION AND ORDER**

365 SUN LLC d/b/a Nutree Cosmetics; LANCE  :

THOMPSON; NATALIA Y. LIKHACHEVA;     :     21 CV 6254 (VB)

BRUNO BORGES GARCIA; and CHROMUS    :

COMERCIAL EIRELLI,                  :

             Defendants.    :

-------------------------------------------------------------x

Briccetti, J:

Plaintiff Equibal, Inc., which sells a line of hair removal products under the brand name "Nufree," brings this action against defendants 365 Sun LLC, Lance Thompson, Natalia Y. Likhacheva (together, the "U.S. Defendants"), and Bruno Borges Garcia and Chromus Comercial Eirelli (together, the "Brazil Defendants"), asserting claims for trademark infringement, unfair competition, and false designation under the Lanham Act; common-law trademark infringement and unfair competition; and violations of New York General Business Law Sections 349 and 350.

Plaintiff alleges defendants' use of the mark "NUTREE Professional" (the "NUTREE Mark") on defendants' line of hair treatment products infringes on plaintiff's intellectual property and trades upon plaintiff's brand and customer goodwill.

Now pending is plaintiff's motion for a preliminary injunction pursuant to Fed. R. Civ. P. 65, seeking to prohibit defendants from using the NUTREE Mark in commerce during the pendency of this action.  (Doc. #141).

For the reasons set forth below, the motion is DENIED.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367.

# BACKGROUND

The parties have submitted memoranda of law and supporting declarations and exhibits.[1]

Together, they reflect the following facts.[2]

This case is concerned with two allegedly competing marks used in conjunction with the sale of beauty products.

Plaintiff manufactures and distributes a variety of cosmetic, salon, and personal care products.  As pertinent here, plaintiff sells "hair removal products, body applicators, and heaters used by salons" under the brand name "Nufree."  (Doc. #142 at 1).  The record contains examples of Nufree-branded goods including liquid depilatory solutions, epilating strips, and aftercare treatments associated with hair removal.  The Nufree line is paraben-free, "of professional grade," and was developed in an FDA-registered laboratory.  (Doc. #145 ¶ 10).

---

[1]    On January 23, 2024, with the Court's permission, defendants supplemented their opposition to the instant motion by filing the expert report of Robert C. Cunbow (the "Cunbow Report").  (Doc. #177-1).  In response, plaintiff argued the Court should disregard the Cunbow Report because it is inadmissible and unhelpful.  (Doc. #181).  Inadmissible evidence may be considered on a motion for a preliminary injunction.  See Mullins v. City of New York, 626 F.3d 47, 52 (2d Cir. 2010); Flores v. Town of Islip, 2019 WL 1515291, at *3 (E.D.N.Y. Apr. 8, 2019).  Accordingly, at this stage, the Court need not decide whether the opinions expressed in the Cunbow Report would be admissible at a trial on the merits.  However, the Court has reviewed the Cunbow Report and gives it little weight on this motion.  Mr. Cunbow largely applies the relevant law to the facts in the record.  This is a task for the Court, not an expert witness.

[2]    Although the Court is required to make findings of fact on a motion for a preliminary injunction, these findings are not binding and may be modified after a trial on the merits.  See Visual Scis., Inc, v. Integrated Commc'ns Inc., 660 F.2d 56, 58 (2d Cir. 1981).

According to plaintiff, "[t]his means that all NUFREE products have been clinically tested and professionally formulated." (Doc. #145 ¶ 10).

Nufree products are designed for and sold primarily to salons and beauty professionals, although they are also available to retail buyers online. These goods are manufactured in and shipped from the United States, but plaintiff sells the products in countries around the world.

In 1995, plaintiff registered "NUFREE" as a federal U.S. trademark (the "NUFREE Mark"). Plaintiff's mark is registered in International Class 003,[3] for use in connection with "non-medicated hair removing lotion." (Doc. #148-1 at ECF 3).[4] Plaintiff further claims a common-law trademark for "NUFREE PROFESSIONAL."[5] Plaintiff has used the NUFREE and/or NUFREE PROFESSIONAL marks since as early as 1985. (Doc. #145 ¶¶ 6–7). According to plaintiff, these marks have long appeared in magazines and major publications and

---

[3]     The U.S. Patent and Trademark Office ("USPTO") groups goods and services referenced in trademark applications into several broad "classes." International Class 003 covers cosmetics and cleaning preparations. U.S. Patent & Trademark Off., Trademark Basics:  Goods and Services, https://www.uspto.gov/trademarks/basics/goods-and-services [https://perma.cc/UGH7-TJ5Z] (last visited Mar. 29, 2024).

[4]     "ECF __" refers to page numbers automatically assigned by the Court's Electronic Filing System.

[5]     Even if not otherwise registered, the first user to appropriate a mark obtains an enforceable common-law "right to exclude others from using it, as long as the initial appropriation and use are accompanied by an intention to continue exploiting the mark commercially." La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc., 495 F.2d 1265, 1271 (2d Cir. 1974). Because defendants do not dispute plaintiff's assertion of a common-law trademark in the NUFREE PROFESSIONAL mark, the Court assumes for the purpose of this motion that plaintiff has satisfied the requirements to obtain common-law trademark rights in this unregistered mark.

Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

have gained widespread consumer recognition.  Plaintiff has also successfully opposed others' attempts to use or register competing trademarks in various jurisdictions.

Defendants Thompson and Likhacheva are the owners and managers of defendant 365 Sun, LLC ("365 Sun"), a U.S.-based marketing and distribution company.  (Doc. #155; Doc. #75 ("Am Compl.") ¶¶ 10–11).  Defendant Garcia is a principal of a Brazil-based manufacturer, defendant Chromus Comercial Eirelli ("Chromus") (Doc. #156 ¶ 4), which formulates and produces a line of hair care and hair treatment products under the brand name "Nutree." Pursuant to a distribution agreement, 365 Sun has advertised, sold, and distributed Nutree-branded products in the United States since 2016.

Nutree-branded products include hydrating hair masks, shampoos and conditioners, and color-depositing masks for different hair types.  Nutree products are sold directly to consumers on Amazon.com and other online platforms, although defendants assert their customers also include salons and salon professionals.  (Doc. #155 ¶¶ 8–9).  According to Garcia, the Nutree product line was "professionally formulated under laboratory conditions" and is "considered to be professional grade."  (Doc. #156 ¶ 6).

On March 11, 2021, Garcia filed an application with the USPTO to register the NUTREE Mark in International Class 003, for use in connection with "[c]osmetic preparations for the hair and scalp; [h]air care preparations; [h]air shampoos and conditioners."  (Doc. #148-4 at ECF 4).[6]

Garcia's application allegedly alerted plaintiff to defendants' use of the NUTREE Mark, and, on May 6, 2021, plaintiff's counsel sent a cease-and-desist letter to the Brazil Defendants. In the letter, counsel asserts the NUTREE Mark infringes on plaintiff's trademarks and is likely

---

[6]     The record also reflects an earlier attempt by Chromus to register the NUTREE Mark, but the application was ultimately abandoned.  (Doc. #148-4 at ECF 2).

to cause consumer confusion because of its similarity to the NUFREE Mark.  (Doc. #148-3).

Plaintiff also filed a letter of protest to Garcia's trademark application with the USPTO.  (Doc.

#148-6).  In the meantime, plaintiff commenced this action by filing a complaint on July 22,

2021.  (Doc. #1).

     Garcia's 2021 trademark application was abandoned on April 21, 2022 (Doc. #148-4 at

ECF 5), but a subsequent application was filed with the USPTO on October 11, 2022 (Doc.

#157-1 at ECF 2).  Plaintiff also filed a letter of protest to Garcia's 2022 application, but the

USPTO proceedings are suspended pending the outcome of this litigation.  (Doc. #157-3 at ECF

2).

## DISCUSSION

I.   <u>Standard of Review</u>

     "A preliminary injunction is an extraordinary and drastic remedy, one that should not be

granted unless the movant, by a <u>clear</u> <u>showing</u>, carries the burden of persuasion."  <u>Sussman v.</u>

<u>Crawford</u>, 488 F.3d 136, 139 (2d Cir. 2007).

     To secure a preliminary injunction, the moving party must demonstrate:

> (1) a likelihood of success on the merits or . . . sufficiently serious questions going to the
> merits to make them a fair ground for litigation and a balance of hardships tipping
> decidedly in the plaintiff's favor; (2) a likelihood of irreparable injury in the absence of
> an injunction; (3) that the balance of hardships tips in the plaintiff's favor; and (4) that the
> public interest would not be disserved by the issuance of an injunction.

<u>Benihana, Inc. v. Benihana of Tokyo, LLC</u>, 784 F.3d 887, 895 (2d Cir. 2015).

     Further, it is axiomatic that when an alleged injury "could be adequately compensated

with money damages," a preliminary injunction should not issue.  <u>Polymer Tech. Corp. v.</u>

<u>Mimran</u>, 37 F.3d 74, 82 (2d Cir. 1994).  Only injuries that are "actual and imminent," <u>Kamerling</u>

<u>v. Massanari</u>, 295 F.3d 206, 214 (2d Cir. 2002), and "cannot be remedied at the end of trial if the

movant were to prevail," Freedom Holdings, Inc. v. Spitzer, 408 F.3d 112, 115 (2d Cir. 2005)

(emphasis omitted), may constitute irreparable harm.

In a trademark infringement case, however, irreparable harm will generally be presumed

if the plaintiff can establish a likelihood of success on the merits—that is, a likelihood the

allegedly infringing mark causes consumer confusion. Zino Davidoff SA v. CVS Corp., 571

F.3d 238, 246 (2d Cir. 2009); Brennan's, Inc. v. Brennan's Rest., L.L.C., 360 F.3d 125, 129 (2d

Cir. 2004) ("[P]roof of a likelihood of confusion establishes both a likelihood of success on the

merits and irreparable harm."). However, the presumption of irreparable harm is rebuttable, for

instance, in cases when a plaintiff unreasonably delays in bringing suit after discovering the

alleged infringement. See, e.g., Citibank, N.A. v. Citytrust, 756 F.2d 273, 275–76 (2d Cir.

1985).

II.     Likelihood of Success on the Merits

Plaintiff argues it has demonstrated a sufficient likelihood of success on the merits

because it has shown defendants' use of the NUTREE Mark is likely to cause consumer

confusion.

The Court disagrees.

A.     Legal Standard

"To prevail on a claim of trademark infringement" under either Section 32 or Section 43

of the Lanham Act, "a plaintiff must show, first, that its mark merits protection, and second, that

[another's] use of a similar mark is likely to cause consumer confusion." Brennan's, Inc. v.

Brennan's Rest., L.L.C., 360 F.3d at 129. The same standard also governs trademark

infringement and unfair competition under New York law. Disney Enters., Inc. v. Sarelli, 322 F.

Supp. 3d 413, 430 (S.D.N.Y. 2018) (collecting cases).

With respect to the first prong, registered trademarks are presumed to confer to the owner protection and exclusive rights of use in commerce.  See Patsy's Italian Rest., Inc. v. Banas, 658 F.3d 254, 266 (2d Cir. 2011) (citing 15 U.S.C. § 1115(a)).

As to the second prong, courts evaluate consumer confusion by balancing the eight factors set forth in Polaroid Corp. v. Polarad Electronics Corp., 287 F.2d 492 (2d Cir. 1961) ("Polaroid"):  "(1) the strength of the mark, (2) the degree of similarity between the marks, (3) the competitive proximity of the products, (4) actual confusion, (5) the likelihood plaintiff will bridge the gap, (6) the defendant's good faith in adopting the mark, (7) the quality of the defendant's products, and (8) the sophistication of the purchasers."  Brennan's, Inc. v. Brennan's Rest., L.L.C., 360 F.3d at 130.

The Polaroid test is not to be applied mechanically, Kelly-Brown v. Winfrey, 717 F.3d 295, 307 (2d Cir. 2013), and no single factor is dispositive, Brennan's, Inc. v. Brennan's Rest., L.L.C., 360 F.3d at 129.  Courts are also free to weigh other considerations, so long as the inquiry focuses "on the ultimate question of likelihood of confusion as to the source of the product."  Brennan's, Inc. v. Brennan's Rest., L.L.C., 360 F.3d at 129.

B.     Analysis

Here, plaintiff's marks are protected.  Plaintiff has submitted registration certificates confirming the validity of the NUFREE Mark, which defendants have not refuted.  (Doc. #148-2 at ECF 5, 23, 37) (U.S. Registration No, 1,912,931).  And, as mentioned above, the Court assumes for the purpose of this motion plaintiff has a common-law trademark in the NUFREE PROFESSIONAL mark, a point defendants also do not challenge.

Accordingly, the Court turns to an analysis of the Polaroid factors, as set forth below.

      1.    <u>Strength of the Mark</u>

The strength of a trademark depends ultimately on its distinctiveness to the public. <u>RiseandShine Corp. v. PepsiCo, Inc.</u>, 41 F.4th 112, 120 (2d Cir. 2022).  Courts evaluating the strength of a mark consider two components:  "the degree to which it is inherently distinctive" and "the degree to which it has achieved public recognition in the marketplace, sometimes called acquired strength."  <u>Id</u>.

Inherent distinctiveness is measured by reference to four categories of marks:  generic, descriptive, suggestive, and arbitrary/fanciful.  <u>Guthrie Healthcare Sys. v. ContextMedia, Inc.</u>, 826 F.3d 27, 41 (2d Cir. 2016).  Arbitrary or fanciful marks merit the greatest protection because they have no intrinsic meaning and "do not communicate any information about the product either directly or by suggestion."  <u>Star Indus., Inc. v. Bacardi & Co.</u>, 412 F.3d 373, 385 (2d Cir. 2005).  In contrast, "[t]rademark law does not offer robust protection to those who demand the exclusive right to use words that describe or suggest a product or its virtues."  <u>RiseandShine Corp. v. PepsiCo, Inc.</u>, 41 F.4th at 123.

With respect to acquired strength, "[i]f a mark has been long, prominently and notoriously used in commerce, there is a high likelihood that consumers will recognize it from its prior use."  <u>Virgin Enters. Ltd. v. Nawab</u>, 335 F.3d 141, 148 (2d Cir. 2003).  In assessing acquired strength, courts look to six factors:  "advertising expenditures, consumer studies linking the mark to a source, unsolicited media coverage of the product, sales success, attempts to plagiarize the mark, and the length and exclusivity of the mark's use."  <u>Jackpocket, Inc. v. Lottomatrix NY LLC</u>, 2024 WL 1152520, at *4 (2d Cir. Mar. 18, 2024).

The NUFREE Mark is arbitrary and fanciful.  "Nufree" is an invented term and bears no apparent connection to the hair removal products it identifies.  When pronounced phonetically,

"Nufree" could be mistaken for a combination of the words "new" and "free."  However, even in combination, those word do not communicate anything about the product's use, source, or attributes.

The NUFREE Mark also has a long history of exclusive use:  it has been continuously registered as a U.S. trademark since 1995, and plaintiff has registered the mark in several foreign jurisdictions.  (Docs. ##148-1 at ECF 3, 148-8).  Moreover, plaintiff has successfully opposed attempts to register or use competing marks, which suggests others have tried to plagiarize or trade on the acquired strength of plaintiff's mark.  (E.g., Docs. ##148-9 to 148-12).  Further, plaintiff has spent an estimated $9,000,000 to develop, advertise, and sell Nufree-branded products.  (Doc. #145 ¶ 22).  These factors all demonstrate the NUFREE Mark is strong and entitled to substantial protection.

Defendants do not dispute the NUFREE Mark's strength.  Rather, they argue the NUTREE Mark is similarly strong.  Although this proposition could be relevant to the balance of hardships between the parties, the strength of the junior NUTREE Mark does not detract from or bear on the strength of the senior NUFREE Mark.

Accordingly, the first Polaroid factor weighs heavily in plaintiff's favor.

2.    Degree of Similarity

In evaluating similarity, courts must consider the "overall impression on a consumer," including "the context in which the marks are displayed and the totality of factors that could cause confusion among prospective purchasers."  Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp., 426 F.3d 532, 537 (2d Cir. 2005).  This analysis requires more than a side-by-side comparison.  Variables such as "mode of presentation, typeface, inclusion of additional words, dress colors, and associated tie-ins," are all relevant.  Two Hands IP LLC v.

Two Hands Am., Inc., 563 F. Supp. 3d 290, 305 (S.D.N.Y. 2021).  Nevertheless, a resemblance

between two marks is not dispositive.  "Rather, the question is whether such similarity is more

likely than not to cause consumer confusion."  Brennan's Inc. v. Brennan's Rest., L.L.C., 360

F.3d at 133.  Thus, even those marks registered without design elements must be viewed in the

context of their marketplace presentation.  The Sports Auth., Inc. v. Prime Hosp. Corp., 89 F.3d

955, 962 (2d Cir. 1996).

     As it concerns typewritten and aural similarity, the two marks here are nearly identical—

"NUFREE" and "NUTREE" differ by only one letter.  Moreover, the variable letters, "t" and "f,"

may be mistaken for one another in certain typefaces.  Generally, the use of nearly identical

dominant words in two marks suggests a possibility of consumer confusion.  See Two Hands IP

LLC v. Two Hands Am., Inc., 563 F. Supp. 3d at 305.

     On the other hand, in the marketplace, the words are rendered in meaningfully different

fonts and styles.  As shown below, the NUFREE Mark appears either in an italicized serif script

or a decorative, stylized font.  The NUTREE Mark is rendered in a capitalized monospace font

and is always accompanied by the word "Professional."  Further, the NUFREE Mark either

appears in black text with no background or is laid over yellow stripes, whereas the NUTREE

Mark is styled in black, grey, white, or blue text against a flat, single-color background in several

different hues.  With respect to packaging, Nufree products appear to have a consistent white and

yellow design,[7] while Nutree uses a variety of different colors, icons, and decorative elements.

---

[7]    Defendants assert Nufree products have blue and white packaging, but the Court sees no
examples of such packaging in the record.  The Court therefore assumes defendants are referring
to plaintiff's "finipil" product line.  (Doc. #155-1 at ECF 17).  However, as discussed below, the
finipil products shown in the record do not bear the NUFREE Mark.  Accordingly, the Court
focuses on the presentation of products clearly labeled with the Nufree brand name.

Defendants argue the similarity between the marks is offset, in part, by the fact that plaintiff also sells products under the brand name "finipil."  (Doc. #154 at 11).  As an initial matter, the finipil-branded products shown in the record do not bear the NUFREE Mark, so it is not clear to the Court that the finipil and Nufree brand names appear together on the same products in the marketplace.  (See, e.g., Doc. #155-1 at ECF 15, 17).  However, the evidence shows the NUTREE Mark does frequently appear alongside other brand names, including "Amazonliss" and "Bottox."  (Doc. #143-1 at ECF 3, 12).  Defendants' use of these other brand names may somewhat lessen the likelihood of confusion between the NUFREE and NUTREE Marks.  W.W.W. Pharm. Co., Inc. v. Gillette Co., 984 F.2d 567, 573 (2d Cir. 1993).

Considering all of the above, the marks are presented differently in the marketplace, but they also have strong typewritten and aural similarities.  On balance, the Court concludes the resemblance between the marks presents some risk of consumer confusion, notwithstanding the marks' presentation in the marketplace.  Accordingly, the second Polaroid factor weighs in plaintiff's favor, but only weakly.

NUFREE Mark

 

(Doc. #148-2 at ECF 11, 20).



(Doc. #155-1 at ECF 3).

NUTREE Mark

  



(Doc. #143-1 at ECF 2, 6, 9, 12).

3.     Competitive Proximity

The third factor asks whether the products "are in related areas of commerce" or have "an overlapping client base that creates a potential for confusion." Brennan's, Inc. v. Brennan's Rest., L.L.C, 360 F.3d at 134.  If two products compete with each other or "fall within the same general class," similar marks "are more likely to cause confusion." Medici Classics Prods., LLC v. Medici Grp., LLC, 683 F. Supp. 2d 304, 312 (S.D.N.Y. 2010).

The Second Circuit has "made it clear that our concern with product proximity relates to the likelihood that customers may be confused as to the source of the products rather than the products themselves." Arrow Fastener Co. v. Stanley Works, 59 F.3d 384, 396 (2d Cir. 1995). Nonetheless, differences in function and consumer appeal "help inform our inquiry as to whether a purchaser" would be confused by proximity in the market. Id.

Here, there is some existing competitive proximity.  The record offers little concrete evidence concerning customer overlap.  However, both brands sell beauty products associated with hair and both brands are primarily sold online, directly to consumers and also to beauty salons and professionals.  Thus, the products target the same broad class of consumers.

On the other hand, the two product lines serve different cosmetic purposes—Nufree products are for hair removal and aftercare, while Nutree offers hair care and treatment solutions. Put another way, it is unlikely a consumer seeking a hair removal solution would instead purchase, for example, Nutree's Amazonliss Anti-Frizz shampoo.  (See Doc. #143-1 at ECF 5). Accordingly, the products are not in direct competition.

On balance, the third <u>Polaroid</u> factor cuts weakly in defendants' favor.

4.    <u>Actual Confusion</u>

The fourth <u>Polaroid</u> factor asks whether there is evidence of actual confusion "which affects the purchasing and selling of the goods or services in question."  <u>Lang v. Ret. Living Publ'g. Co.</u>, 949 F.2d 576, 583 (2d Cir. 1991).  A showing of actual confusion is not necessary to prevail on the merits of a trademark infringement claim, but the absence of such evidence generally favors the junior user.  <u>Easy Spirit, LLC v. Skechers U.S.A., Inc.</u>, 571 F. Supp. 3d 185, 207 (S.D.N.Y. 2021).

Here, there is no evidence of actual confusion.  Plaintiff submitted a sworn declaration indicating Equibal employees have received customer inquiries asking whether plaintiff "produces or is connected to the NUTREE line of products."  (Doc. #145 ¶ 22).  But "inquiries about an owner of a mark and an alleged infringer do not amount to actual confusion.  Indeed, such inquiries are arguably premised upon a <u>lack</u> of confusion between the products such as to inspire the inquiry itself."  <u>Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.</u>, 269 F.3d 114, 124 (2d Cir. 2001).

Plaintiff also points to its success defending against registration of the word "Nutree" in in administrative trademark proceedings.  (Doc. #142 at 11).  However, plaintiff succeeded in those actions based on a <u>possibility</u> of confusion between the marks.  (See, e.g., Docs. ##149-10

at ECF 2, 149-12 at ECF 7).  While relevant, this evidence does not bear on the fourth factor, which is concerned with <u>actual</u> confusion, observed in the <u>marketplace</u>.  <u>See also Jackpocket, Inc. v. Lottomatrix NY LLC</u>, 2024 WL 1152520, at *5 ("[E]vidence of actual confusion must link the confusion to any potential or actual effect on consumers' purchasing decisions." (emphasis omitted)).

In sum, the fourth <u>Polaroid</u> factor weighs in defendants' favor.

       5.    <u>Bridging the Gap</u>

"This factor looks to either the likelihood that [a plaintiff] will enter [the defendant's] business or the average customer's perception of the likelihood that the plaintiff would enter the defendant's market."  <u>The Sports Auth., Inc. v. Prime Hosp. Corp.</u>, 89 F.3d at 963.

Plaintiff contends the fifth factor is irrelevant because the products are already in the same industry.  Not so.  In <u>Starbucks Corp. v. Wolfe's Borough Coffee, Inc.</u>, the Second Circuit concluded that a bridging-the-gap analysis is unnecessary when products are "in direct competition with each other."  588 F.3d 97, 115 (2d Cir. 2009).  As discussed above, although the products here are arguably in the same broad industry category, they are not in direct competition.

Although Nufree could one day expand its offerings to include hair treatment products, plaintiff has offered no evidence of its intention to do so.  Nufree has also developed considerable consumer recognition in the beauty products industry over many decades but has thus far never offered hair treatment products like those sold by Nutree.  Thus, the Court finds it unlikely that plaintiff will bridge the gap or that consumers perceive plaintiff likely to bridge the gap.

Accordingly, the fifth <u>Polaroid</u> factor favors defendants.

14

6.     Bad Faith

"Bad faith generally refers to an attempt by a junior user of a mark to exploit the good will and reputation of a senior user by adopting the mark with the intent to sow confusion between the two companies' products." Star Indus., Inc. v. Bacardi & Co., 412 F.3d at 388. Although defendants' actual or constructive awareness of plaintiff's mark alone would not evince bad faith, "where such prior knowledge is accompanied by similarities so strong it seems plain that deliberate copying has occurred, we have upheld findings of bad faith." Paddington Corp. v. Attiki Imps. & Distribs. Inc., 996 F.2d 577, 587 (2d Cir. 1993).

Here, there is no evidence defendants had actual knowledge of the NUFREE Mark before they chose the NUTREE Mark.  Nonetheless, in 2016, defendant Chromus attempted to trademark the NUTREE Mark in Colombia, where registration was denied because of the potential for confusion with the NUFREE Mark.  (Doc. #148-10).  Defendant 365 Sun began marketing and distributing Nutree-branded products in 2016, although the record does not reveal whether sales commenced before or after the Colombia Trademark Office's decision.  (Doc. #155 ¶ 5).  Although not conclusive, this evidence suggests defendants were aware of the NUFREE Mark around the time they launched the Nutree brand.

Moreover, as discussed above, there is a very strong similarity between the marks.  And, given that neither mark has any apparent meaning or connection to the products it identifies, the Court is dubious defendants' use of the NUTREE Mark was coincidental.

Nevertheless, in the absence of more direct evidence of bad faith on defendants' part, the sixth Polaroid factor cuts only weakly in plaintiff's favor.

7.      Quality

The quality factor "is primarily concerned with whether the senior user's reputation could

be jeopardized by virtue of the fact that the junior user's product is of inferior quality."  Arrow

Fastener Co. v. Stanley Works, 59 F.3d at 398.

Plaintiff alleges its products are of superior quality because they are paraben-free, were

developed in an FDA-registered laboratory, are professionally formulated and clinically tested,

and are shipped out of a "self-contained distribution center."  (Doc #142 at 12–13).  Plaintiff

argues defendants' goods, in contrast, have not undergone the same "rigorous testing and

approval."  (Id. at 13).  In opposition, however, defendants assert Nutree products are also of

professional grade and were developed in a research laboratory in Brazil.

Other than these largely conclusory statements, there is no evidence in the record

permitting the Court to draw a meaningful comparison between the quality of the parties'

respective goods.  For instance, it is not self-evident plaintiff's products are superior because

they are shipped out of a "self-contained distribution center" and clinically tested, especially

when defendants' products are designed for different cosmetic purposes.

In sum, the seventh Polaroid factor is neutral.

8.      Sophistication of Purchasers

The final Polaroid factor considers the overall sophistication of "the ordinary purchaser,

buying under the normally prevalent conditions of the market and giving the attention such

purchasers usually give in buying that class of goods."  Star Indus., Inc. v. Bacardi & Co., 412

F.3d at 390.  If the average consumer of a particular product is "more sophisticated and careful,"

courts assume it is less likely "similarities in trade dress or trade marks will result in confusion

concerning the source or sponsorship of the product."  Bristol-Myers Squibb Co. v. McNeil-

16

P.P.C., Inc., 973 F.2d 1033, 1046 (2d Cir. 1992).  "Consumer sophistication can be demonstrated by direct evidence, such as expert testimony or surveys, or, in some cases, a court is entitled to reach a conclusion about consumer sophistication based solely on the nature of the product or its price."  Hope Organics LLC v. Preggo Leggings LLC, 2021 WL 5919367, at *11 (S.D.N.Y. Dec. 15, 2021).

Here, plaintiff argues defendants' customers are necessarily unsophisticated because they are "retail buyers of beauty products on the Internet, which sell for cheap prices, including from Amazon.com and other websites."  (Doc. #142 at 13).  Plaintiff does not define "cheap prices" in this industry context, but the limited evidence in the record reveals Nutree product prices ranging from $34.99 to $164.99.  (Doc. #143-1).

Defendants counter by asserting their customers also include sophisticated stylists and salons.  (Doc. #154 at 15).  Moreover, according to defendants, that customers purchase Nutree through online platforms like Amazon.com "does not create an inference that they are unsophisticated."  (Id.).

In this context, there is little the Court can conclude about buyer sophistication from these generalized statements.  And, "[d]espite the inferences that can be drawn from . . . pricing, the lack of evidence precludes any useful conclusion on the issue."  Two Hands IP LLC v. Two Hands Am., Inc., 563 F. Supp. 3d at 308; see also Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 588 F.3d at 119 ("[P]rice alone is not determinative of the care a customer will take in making purchases, and our touchstone remains the general impression that is left with the ordinary consumer.").

Accordingly, the eighth Polaroid factor is also neutral.

9.      Overall Likelihood of Confusion

On balance, plaintiff has not demonstrated an adequate likelihood of confusion to warrant the injunctive relief it seeks.  In this Circuit, "a likelihood of confusion means a probability of confusion; it is not sufficient if confusion is merely possible." Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 269 F.3d at 121.  Plaintiff's mark is very strong, and there are striking similarities between the words Nutree and Nufree, which suggests the possibility of intentional copying.  However, when considering the realities of the marketplace, the utility of the respective products, and the absence of any meaningful evidence of actual confusion (notwithstanding how long the marks have appeared side-by-side in commerce), the Court cannot conclude on the present record that consumer confusion is probable.

Accordingly, plaintiff has not demonstrated a likelihood of success on the merits of its claims and is not entitled to a presumption of irreparable harm.

III.    Irreparable Harm

Defendants argue plaintiff's motion must also be denied because plaintiff delayed in seeking a preliminary injunction and therefore has not adequately demonstrated irreparable harm.

The Court agrees.

A.      Legal Standard

Preliminary injunctive relief is premised on "an urgent need for speedy action to protect the plaintiffs' rights." Citibank, N.A. v. Citytrust, 756 F.2d at 276.  Thus, absent an adequate justification, a plaintiff's delay in enforcing those rights tends to suggest an emergency remedy is unnecessary.  See, e.g., Tough Traveler Ltd. v. Outbound Prods., 60 F.3d 964, 968 (2d Cir. 1995).  "Acceptable explanations for delay include the plaintiff's ignorance regarding defendant's alleged infringement, good-faith attempts to investigate that infringement, and

diligent pursuit of settlement negotiations." Goat Fashion Ltd. v. 1661, Inc., 2020 WL 5758917, at *5 (S.D.N.Y. Sept. 28, 2020).  Importantly, "the length of delay is measured from the time the plaintiff originally learned of the alleged violation or is put on notice thereof, not when the irreparable injury allegedly begins." Two Hands IP LLC v. Two Hands Am., Inc., 563 F. Supp. 3d at 301 (citing Tough Traveler Ltd. v. Outbound Prods., 60 F.3d at 968).

      B.    Analysis

      Plaintiff's owner and founder, NormaJean Fusco, attests she became aware of the NUTREE Mark "in or about 2021," when defendants applied for a trademark with the USPTO. (Doc. #145 ¶ 15).  Indeed, the record reflects defendant Garcia applied to register the NUTREE Mark on March 11, 2021.  (Doc. #148-4 at ECF 4).  Plaintiff's counsel sent a cease-and-desist letter to defendants' counsel on May 6, 2021 (Doc. #148-3), and plaintiff then commenced this action on July 22, 2021 (Doc. #1).  However, plaintiff did not move for a preliminary injunction until September 18, 2023, more than two years after it filed the complaint, and thirty months after Garcia's 2021 attempt to register the NUTREE Mark.  (Doc. #141).

      Much of this delay can be excused.  Because of persistent obstacles in serving the Brazil Defendants, it was not until May 11, 2023, that all defendants appeared in this matter.  (Doc. #122).  And plaintiff correctly argues any preliminary injunction issued prior to that time could not have bound the Brazil Defendants because the Court would not have had personal jurisdiction over those parties.  See Visual Sci., Inc. v. Integrated Commc'ns, Inc., 660 F.2d at 59 ("A court must have in personam jurisdiction over a party before it can validly enter even an interlocutory injunction against him.").  The Court is persuaded a preliminary injunction binding only the U.S. Defendants would not have prevented the Brazil Defendants from marketing or

selling Nutree-branded products directly or through another distributor.  Accordingly, it would have been inefficient for plaintiff to move prior to May 11, 2023.

However, plaintiff has not explained either (i) the more than four-month delay between Garcia's trademark application—which put plaintiff on notice of the allegedly infringing mark—and the filing of the complaint, or (ii) the four-month delay between the Brazil Defendants' appearance in this action and plaintiff's filing of the instant motion.

Giving plaintiff the benefit of the doubt, the pre-suit delay may reasonably be attributable to good-faith attempts to investigate the infringement, although plaintiff has not affirmatively argued as much.  However, the Court sees no clear explanation for the second delay, after the Brazil Defendants appeared.  The Court is aware the parties have attempted to resolve this case at various points.  But settlement negotiations are not a justification for delay if a plaintiff has no reason to believe mutual resolution is a realistic possibility.  See, e.g., Two Hands IP LLC v. Two Hands Am., Inc., 563 F. Supp. 3d at 300–01; Fashion Week, Inc. v. Council of Fashion Designers of Am., Inc., 2016 WL 4367990, at *4 (S.D.N.Y. Aug. 12, 2016).

In a letter filed on September 1, 2023, plaintiff's counsel informed the Court there had been "no meaningful progress in reaching an agreed resolution."  (Doc. #133).  Thus, settlement discussions cannot excuse plaintiff for waiting more than four months (from May 11, 2023) to seek a preliminary injunction after all defendants were within the Court's jurisdiction.  In the absence of an adequate explanation, delays of as little as ten weeks may be "sufficient to defeat the presumption of irreparable harm."  Weight Watchers Int'l, Inc. v. Luigino's, Inc., 423 F.3d 137, 144 (2d Cir. 2005) (collecting cases).

Moreover, the record reveals plaintiff may have been on inquiry notice of defendants' use of the NUTREE Mark earlier than 2021.  As mentioned above, Chromus attempted to register

the NUTREE Mark in Colombia in 2016.  (Doc. #148-10 at ECF 5, 6).  Ms. Fusco successfully

opposed the application and, therefore, was aware as early as April 2016 that Chromus intended

to use the NUTREE Mark for its hair care products.  (Id. at ECF 5).  Although the Court declines

to conclude whether this alone was sufficient to give plaintiff constructive knowledge of

defendants' use of the NUTREE Mark in the United States, it does suggest plaintiff may have

had an opportunity to avoid the alleged irreparable harm claimed here.

In sum, any presumption of irreparable harm plaintiff would have otherwise been entitled

to is rebutted by its delay in seeking relief.  Accordingly, the preliminary injunction must be

denied for the independent reason plaintiff has not demonstrated irreparable harm from

defendants' use of the NUTREE Mark.[8]

## CONCLUSION

Plaintiff's motion for a preliminary injunction is DENIED.

The Clerk is instructed to terminate the motion.  (Doc. #141).

Dated:  April 9, 2024
        White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge

---

[8]      Because the Court finds plaintiff has not established a likelihood of success on the merits
or irreparable harm, it need not consider the balance of hardships between the parties or whether
the proposed preliminary injunction would serve the public interest.